UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRENDA TAYLOR,                           )
                                         )
                     Plaintiff,          )
                                         )
            v.                           )        No. 1:25-cv-00918-TWP-MJD
                                         )
NISWI, LC d/b/a LENDUMO,                  )
SOAREN MANAGEMENT, LLC,                   )
LDF HOLDINGS, LLC,                        )
BRITTANY ALLEN,                           )
JOHN DOES 1-20,                           )
                                         )
                     Defendants.          )

**REPORT AND RECOMMENDATION**

Defendants Niswi LC, LDF Holdings LLC, and Brittany Allen have filed a Motion to

Compel Arbitration, or in the Alternative, to Dismiss for Lack of Jurisdiction and for Failure to

State a Claim.  [Dkt. 68.]  Plaintiff Brenda Taylor opposes this motion.  [Dkt. 73.]  Judge Tanya

Walton Pratt has designated the undersigned Magistrate Judge to issue a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  [Dkt. 72.]  As explained below, the

Undersigned recommends that Defendants' Motion to Compel Arbitration be **granted** on the

issue of arbitrability.  Given this finding the Undersigned need not, and thus does not, consider

whether the Parties' dispute is in fact arbitrable or whether Plaintiff's claims should be dismissed

for tribal sovereign immunity or failure to state a claim.

**I. Background**

Plaintiff was a citizen of Indiana during the time relevant to this lawsuit.  *Id.* at ¶ 8.

Defendants are two entities and an individual involved in the consumer lending activities of the

Lac du Flambeau Band of Lake Superior Chippewa Indians ("the Tribe").  *Id.* at ¶¶ 9-15.

Plaintiff claims that while the Tribe is nominally in the business of consumer lending, in reality

the Tribe is the cat's paw of non-Tribal predatory lenders seeking to cloak usury in tribal

sovereign immunity.  *Id.* at ¶¶ 24-60.

Plaintiff entered into five high interest consumer loans with Defendants between

November 2021 and March 2022.  [Dkt. 53 at ¶¶ 56-61.]  The loans ranged from $1,200 to

$1,800, with annual interest rates ranging from 693.904% to 794.86%.  *Id.*  Plaintiff claims these

loans carry more than double the Indiana Uniform Consumer Credit Code's ("IUCCC") statutory

maximum interest rate and are therefore "unlawful debts" for purposes of 18 U.S.C. § 1961(6).

*Id.* at ¶ 101.  Based on these allegations, she asserts claims under the IUCCC and the Racketeer

Influenced and Corrupt Organizations Act ("RICO").  *Id.* at ¶¶ 92-102.

Each loan agreement includes an identical choice of law provision, which provides as

follows:

> **GOVERNING LAW**:  The laws of the Tribe and applicable federal law will
> govern this agreement, without regard to the laws of any state or other jurisdiction,
> including the Conflict of Laws clause(s) of any state.  You agree to be bound by
> Tribal law, and in the event of a bona fide dispute between you and us, Tribal law
> and applicable federal law shall exclusively apply to such dispute.

*See*, *e.g.*, [Dkt. 53-1.]

Each loan agreement also includes an identical arbitration agreement, which states that

Defendants have tribal sovereign immunity from lawsuits but will agree to a "limited waiver

[which] is strictly limited to individual arbitration claims set forth below and judicial actions to

enforce such individual arbitration awards as strictly limited herein."  *Id.* at 14.  "The arbitrator

shall apply substantive law consistent with the Governing Law set forth above, and the Federal

Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA') and applicable statutes of limitation, and shall honor claims of privilege recognized at law." *Id.* at 15.

The Tribe has a body of law called the Tribal Code.[1] The Tribal Code fully incorporated "the Wisconsin Consumer Act, Wis. Stat. Chapters 421 to 427, and any rules or orders of any Wisconsin administrative agency promulgated thereunder . . . as tribal law" in March 1988. *See* Tribal Code § 46.101. The Wisconsin Consumer Act governs consumer credit transactions. Wis. State §§ 422.101 to 422.506. The Wisconsin Consumer Act also provides, in relevant part:

> Unless superseded by the particular provisions of chs. 421 to 427, chs. 401 to 411 and the principles of law and equity, including the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, bankruptcy, or other validating or invalidating cause supplement chs. 421 to 427.

Wis. Stat. § 421.103(1). Chapters 401 to 411 of the Wisconsin Code, which are incorporated into the Wisconsin Consumer Act, as shown in the quoted language above, is the Wisconsin Uniform Commercial Code, which also governs principles of contract formation.

The Tribal Code also includes a chapter governing consumer financial services. Tribal Code §§ 94.101 to 94.1004. The subchapter governing short-term consumer loans provides that state law limiting the terms on consumer loans, including maximum interest rates, "shall not apply to extensions of credit under a Loan operated in accordance with this subchapter." Tribal Code § 94.804(6)(a).

The loan agreements include a forum selection clause. The Parties agree that any dispute will be heard either by the American Arbitration Association ("AAA") or by a mutually agreed upon arbitrator "who is an attorney, retired judge, or arbitrator registered in good standing with an arbitration association[.]" [Dkt. 53-1 at 15.] If the dispute is heard by the AAA, then the AAA's procedural rules will govern the arbitration. *Id.* If the dispute is heard by an alternative,

---

[1] *See* https://www.ldftribe.com/departments/97/Other_Pages/Court_Ordinances.html. (May 11, 2026).

mutually agreed upon arbitrator, then that arbitrator's procedural rules will govern the arbitration. *Id.*

Finally, each arbitration agreement includes an identical delegation provision, which provides, "The words 'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this . . . Arbitration Provision ('this Provision'), the validity and scope of this Provision and any claim or attempt to set aside this Provision[.]" *Id.*

## II. Legal Standard

The Federal Arbitration Act ("FAA") embodies "both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Indeed, the FAA regards written arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, when presented with a valid arbitration agreement, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. Courts must grant a motion to compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement to arbitrate, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). "A court may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 252 (2017).

The party seeking to compel arbitration bears the burden of demonstrating a valid agreement to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). In evaluating an arbitration agreement, courts may properly consider relevant exhibits and affidavits. *Reineke v. Circuit City Stores, Inc.*, 2004 WL 442639, at *1 (N.D. Ill. 2004). Once the moving party satisfies its initial burden, the nonmoving party must identify a triable issue of fact, much like the nonmoving party's burden on a motion for summary judgment. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The nonmoving party "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* Courts view the evidence in the light most favorable to the nonmoving party and draw reasonable inferences in its favor. *Id.* If the non-moving party identifies a triable issue of fact, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

### III. Discussion

The issue currently before the Undersigned is whether the arbitrability inquiry, *i.e.*, whether the dispute falls within the arbitration agreement's scope, shall be decided by the court or by an arbitrator. "Unless the parties clearly and unmistakably provide otherwise," this issue of arbitrability is decided by the court. *AT&T Technologies Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). But where the arbitration agreement contains a valid delegation provision providing that issues of arbitrability will be decided by the arbitrator, then the court will enforce the delegation provision and compel arbitration on the issue of arbitrability. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). The underlying agreement, the arbitration agreement, and the delegation provision are all severable. *Id.* This means that a party seeking to avoid arbitration must make a specific challenge to the arbitration

agreement and a specific challenge to the delegation provision in order to avoid arbitration and keep their lawsuit in court. *Id.* When the non-moving party raises a specific challenge to the delegation provision, then the court must evaluate that challenge before ordering compliance with the delegation provision and sending the dispute to arbitration. *Id.*

### A.  Collateral Estoppel

Plaintiff's threshold challenge to the delegation provision is one of collateral estoppel, but her argument is perfunctory and undeveloped. Plaintiff opted out of a class action in the Western District of Virginia that raised similar consumer protection claims against defendants associated with the Tribe's consumer lending activities. *See Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756 (W.D. Vir. 2023). In that case, the court held that the delegation provision impermissibly waived the plaintiffs' state substantive rights without recourse to state substantive law and was therefore unenforceable as a matter of public policy. *Id.* at 777. Plaintiff argues that the Defendants in this case should be collaterally estopped from enforcing the delegation provision because the defendants in *Fitzgerald* were unsuccessful on that issue. [Dkt. 73 at 17.]

Plaintiff's collateral estoppel argument consists of three sentences. [Dkt. 73 at 17.] She does not identify which jurisdiction's collateral estoppel law applies in this case. *See, e.g., DeGuelle v. Camilli*, 724 F.3d 933 (7th Cir. 2013) (noting differences between the federal common law of collateral estoppel and Wisconsin's law of collateral estoppel). Nor does she identify the elements of collateral estoppel. She fails to mention that the Defendants in this case are not the same defendants that were sued in *Fitzgerald*, *see* 3:20-cv-44, dkt. 135 (W.D. Vir. Jan. 10, 2023), and she does not explain why the Defendants in this case should be bound by a decision issued in a case to which they were not parties.

6

Plaintiff's perfunctory argument is fatal to her collateral estoppel defense.  "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *United States v. Davis*, 29 F.4th 380, 385 n. 2 (7th Cir. 2022); *see also Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011)  ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.") Plaintiff has the burden of establishing collateral estoppel, and the argument she presents in her response brief fails to meet that burden.  *See Freeman United Coal Min. Co. v. Office of Workers' Compensation Program*, 20 F.3d 289, 394 (7th Cir. 1994)   (the party invoking collateral estoppel has the burden of establishing its elements).

### B.  Mutual Assent and Definiteness of Terms

Plaintiff next challenges the delegation provision under the Seventh Circuit Court of Appeals' recent decision in *Harris v. W6LS, Inc.*, 171 F.4th 957 (7th Cir. 2026), *amended by*, --- F.4th ---, 2026 WL 1641195 (June 5, 2026), *reh'g denied*, --- F.4th --- (June 5, 2026), but *Harris* is distinguishable.  As in this case, the complaint in *Harris* raised consumer protection challenges under state and federal law to a tribal lender's high interest consumer loans (specifically, defendants associated with the lending activities of the Otoe-Missouria Tribe).  *Id.* at 959.  The plaintiffs in *Harris* challenged the arbitration agreement and its delegation provision and sought to litigate their claims in federal court.  Both the arbitration agreement and the delegation provision were governed by "Tribal Law and applicable federal law" and excluded state law.  *Id.* at 960.  The court noted that in interpreting arbitration agreements, courts apply "ordinary state-law principles that govern the formation of contracts" to determine "whether the parties agreed to arbitrate a certain matter (including arbitrability)." *Id.* at 962 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  At the time the parties entered into the arbitration

7

agreement, however, the Otoe-Missouria tribal code did not include a legal framework governing contract formation. *Harris*, 171 F.4th at 962. The court reasoned that the delegation provision was therefore unenforceable because it involved indefinite material terms that precluded the parties' mutual assent. *Id.* at 963. The court explained:

> Here, the lack of definiteness in the contract's Governing Law provision contradicts any mutual assent to the delegation or arbitration provisions. The contract purports to have the arbitrator use applicable federal law or Otoe-Missouria tribal law to determine the interpretation, applicability, validity, arbitrability, enforceability, formation or scope of this Arbitration Agreement. But as discussed above, federal law does not provide underlying principles of contract formation and there was no tribal law for an arbitrator to apply when plaintiffs signed their contracts. We cannot, then, ascertain what the parties have agreed to do in committing their future disputes to arbitration. Since it was not reasonably certain what law the parties agreed would be used in arbitration, they cannot have mutually assented to the delegation or arbitration terms.

*Id.* (cleaned up).

Unlike *Harris*, the delegation provision in this case is governed by a well-developed body of law governing contract formation and defenses—that is to say, the law of Wisconsin. At the time Plaintiff entered into the arbitration agreement and delegation provision, she agreed that the enforceability of these agreements would be governed by Wisconsin contract law. That is because she agreed to be bound by the Tribal Code which fully incorporates the Wisconsin Consumer Act. Tribal Code 46.101. The Wisconsin Consumer Act in turn governs consumer credit transactions, Wis. State §§ 422.101 to 422.506, and incorporates Wisconsin's Uniform Commercial Code as well as "the principles of law and equity, including the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, bankruptcy, or other validating or invalidating cause supplement to [the Wisconsin Consumer Act]." Wis. Stat. § 421.103(1). Had the delegation provision in this case expressly stated, "issues of arbitrability will be governed by the law of Wisconsin," then the holding in *Harris*

8

would clearly have no impact on the resolution of this issue, yet that is effectively what the delegation provision states by including "laws of the Tribe and applicable federal law" in the "governing law" section of the Parties' agreement.[2]

The Undersigned agrees with Defendants that the incorporation of the Wisconsin Consumer Act into the Tribal Code distinguishes this case from *Harris* and that here, unlike in *Harris*, the terms of the delegation provision were sufficiently definite to allow the Parties to mutually assent to the delegation provision.

### C. Tribal Jurisdiction

Plaintiff next argues that the Tribal Code cannot govern the delegation provision because the Tribe's legal jurisdiction does not extend to the underlying consumer credit transactions, which Plaintiff signed over the internet off reservation land.  Plaintiff relies on *Jackson v. Payday Financial*, LLC, 764 F.3d 765 (7th Cir. 2014), which held that a forum selection clause requiring litigation in a tribal court is invalid when the tribal court lacks subject matter jurisdiction over the dispute.  *Id.* at 781-86.  That is because tribal courts, like federal courts, are courts of limited jurisdiction, and they may only hear disputes that "implicate the sovereignty of the tribe over its land and its concomitant authority to regulate the activity of nonmembers on that land." *Id.* at 782.  A tribal court's lack of subject matter jurisdiction cannot be waived, and "a nonmember's consent to tribal authority [by way of a forum selection clause in an arbitration agreement] is not sufficient to establish the jurisdiction of a tribal court." *Id.* at 783 (citing *Plains Commerce Bank v. Long Family Land and Cattle Company, Inc.* 554 U.S. 316, 337 (2008)).

---

[2] Although Defendants rely on the incorporation of Wisconsin law into the Tribal Code in their opening brief—indeed, that is their principal argument—Plaintiff does not address the incorporation of Wisconsin law into the Tribal Code at any point in her response brief.  *See generally* [dkt. 73.]

The jurisdictional issues in *Jackson*, which arose from a forum selection clause selecting a tribal court, are not applicable to the present dispute, which involves a choice of law provision selecting the Tribal Code and applicable federal law. As a general matter, parties to an arbitration agreement are free to bind themselves to any body of law they choose, irrespective of whether that body of law derives from a government with legal jurisdiction over the transaction or whether that body of law is presently valid outside the context of the parties' agreement. *See DIRECTTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015) ("[T]he Federal Arbitration Act allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions [.] . . . In principle, they might choose to have portions of their contract governed by the law of Tibet, the law of pre-revolutionary Russia," or state court decisions that have been overruled by the Supreme Court.). Although the Parties in this case agreed that the delegation provision, the arbitration agreement, and the loan agreement would be governed by the Tribal Code; they did not agree that the dispute would be heard by a tribal court, as the litigants did in *Jackson*. Instead, the Parties agreed that any dispute would be heard either by the AAA or by an alternative, mutually agreed upon arbitrator "who is an attorney, retired judge, or arbitrator registered in good standing with an arbitration association[.]" [Dkt. 53-1 at 15.] For this reason, the jurisdictional issues in *Jackson* do not apply, and Plaintiff's reliance on *Jackson* is misplaced.[3]

---

[3] Plaintiff also argues that the Tribal Code is not "law" because certain relevant provisions of the Tribal Code, *i.e.*, the provisions governing high-interest loans to non-tribal members off reservation land, do not apply to members of the Tribe themselves and only apply to outsiders. [Dkt. 73 at 22-23.] Plaintiff likens this aspect of the Tribal Code to a "Letter of Marque and Reprisal," which is essentially a war power reserved to Congress. *Id.* at n. 1 (citing U.S. Const. Art. 1, § 8). Whatever merit this argument might have, it does not challenge the delegation provision with particularity. Instead, it challenges the arbitration agreement as a whole and the underlying loan agreement. But merely challenging the underlying agreement and issues of arbitrability, without specifically challenging the validity of the delegation provision itself, is insufficient to overcome the operation of the delegation provision. *See Rent-A-Center*, 561 U.S. at 71.

### D. Prospective Waiver, Unconscionability, and Public Policy

Plaintiff objects to both the delegation provision and the arbitration agreement as a whole under the doctrines of "prospective waiver," unconscionability, and public policy, but a close reading of these arguments reveals that they are, in substance, merely directed at the issue of arbitrability itself and do not succeed in specifically disproving the validity of the delegation provision, as is required for a successful challenge under well-established Supreme Court precedent.

A party may challenge an arbitration agreement under the "prospective waiver" doctrine, whereby an agreement that prospectively waives "a party's right to pursue statutory remedies" may be unenforceable as a violation of public policy. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985). Although parties possess broad latitude to specify the rules under which their arbitration will be conducted, they must preserve the ability to assert federal statutory causes of action so that "the statute[s] will continue to serve both [their] remedial and deterrent function[s]." *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). If a "prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," then courts should enforce the parties' agreement to arbitrate. *Mitsubishi Motors*, 473 U.S. at 637. But where an arbitration agreement prevents a litigant from vindicating federal substantive statutory rights, courts will not enforce the agreement. *Id.*

District courts within the Seventh Circuit are divided as to whether the prospective waiver doctrine applies only to impermissible waivers of federal statutory rights, or if the doctrine extends to impermissible waivers of state statutory rights as well. *Compare Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 836 (S.D. Ind. 2024) ("Because the FAA stands on equal footing with other federal statutes, the prospective waiver rule becomes relevant only

11

where compelling arbitration, as the FAA instructs, simultaneously jeopardizes federally protected interests . . . . We, therefore, find it unsurprising that the Supreme Court has never invoked the prospective waiver doctrine in cases involving state statutory claims.") (collecting cases) *with Harris v. FSST Management Services, LLC*, 686 F.Supp.3d 734, 739 (N.D. Ill. 2023) (describing the prospective waiver doctrine with respect to a delegation provision as follows: "Is there a specific challenge to [the] delegation provision? If so, does the choice of law clause prospectively waive federal or state rights? If so, the entire loan agreement, and implicitly the delegation and arbitration provisions, are also unenforceable.").  The Seventh Circuit Court of Appeals has not resolved this issue.  *See Harris*, 171 F.4th at 962 ("Because we find that defendants' motion to compel arbitration fails on ordinary formation principles," described *supra*, "we need not reach the untrodden ground of prospective waiver of state-law rights . . . and leave that question for another day").  As explained below, the Undersigned need not take sides on this aspect of the prospective waiver doctrine because Plaintiff's argument fails under either theory.

Plaintiff argues that the arbitration agreement and delegation provision must be set aside because they prospectively waive her statutory rights to bring a claim against defendants under the IUCCC, which is an Indiana statute prohibiting usury, and RICO, a federal statute that incorporates concepts from state law for the definition of an "unlawful debt." [Dkt. 73 at 23.] She states that numerous cases have held that "arbitration agreements and delegation provisions are unenforceable where they operate in tandem with a 'choice of law' clause to effect a prospective waiver of federal and statute statutory rights." *Id.*

Plaintiff makes two distinct arguments under the prospective waiver doctrine.  First, she argues that by "disclaiming state law [in the arbitration agreement], Defendants . . . prevent the arbitrator from applying the body of law necessary to determine arbitrability, making both the

12

arbitration clause and the delegation clause unenforceable." [Dkt. 73 at 20.] (citing *Hengle v. Treppa*, 19 F.4th 324, 342 (4th Cir. 2021) (holding that a delegation provision was invalid because by selecting tribal law in the choice of law provision, the arbitration agreement deprived plaintiff of any contract formation defenses); *Smith v. Western Sky Fin., LLC*, 168 F. Supp. 3d 778, 786 (E.D. Pa. 2016) ("In practical terms, enforcing the delegation provision would place an arbitrator in the impossible position of deciding the enforceability of the agreement without authority to apply any applicable federal or state law.").  But as explained *supra*, this case is distinguishable from *Hengle* and other tribal lending cases cited by Plaintiff because the tribal law at issue here expressly incorporates Wisconsin contract law.  [Dkt. 53-1 at 10]; Tribal Code 46.101; Wis. Stat. § 421.103(1).  Thus, by enforcing the delegation provision and compelling arbitration on the issue of arbitrability, the Court would reserve the prospective waiver questions that Plaintiff raises in her brief, as well as any other arguments she might wish to present on the issue of arbitrability, to the AAA or an alternative, mutually agreed upon arbitrator.  The arbitrator would then apply the "laws of the Tribe," which include Wisconsin's body of law on contract formation and defenses, to determine the arbitrability of the Parties' dispute.  Unlike *Hengle*, where compelling arbitration on the issue of arbitrability would have deprived the plaintiff from asserting legal defenses to the delegation provision, in this case Plaintiff would have the benefit of Wisconsin's state law defenses to contract formation.  Plaintiff does not point to an analogous case where a court determined that the prospective waiver doctrine prohibits such a choice of law provision, and she does not explain how her rights would be impacted by availing herself of Wisconsin contract defenses rather than Indiana contract defenses.

Plaintiff's second prospective waiver argument seeks to collapse her challenges to the delegation provision and the arbitration agreement as a whole into a single inquiry, arguing that

13

"if the 'animating purpose' of the arbitration agreement is to prospectively waive statutory rights, neither it *nor the delegation provision* are valid." [Dkt. 73 at 26] (emphasis added). This approach contradicts Supreme Court precedent, which holds that a litigant must challenge the delegation provision with specificity. The Court has explained that, while a litigant may challenge both the arbitration agreement as a whole and the delegation provision in particular under the same legal theory, defeating the delegation provision still requires a particularized challenge. *See*, *e.g.*, *Rent-A-Center*, 561 U.S. at 74 (explaining that a successful challenge to a delegation provision as unconscionable due to the arbitration agreement's limits on discovery would require the challenger to show that those limits "cause[] the arbitration of his claim that the Agreement is unenforceable to be unconscionable" which "would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable"). Thus, Plaintiff may raise a prospective waiver challenge to both the delegation provision and the arbitration agreement as a whole, but her challenge to the delegation provision must be particular to that specific aspect of the agreement. In this case, it is not.

Plaintiff cites non-binding precedent from the Fourth Circuit Court of Appeals which does appear to collapse these inquiries to a certain degree, but the Seventh Circuit Court of Appeals has not adopted that approach. *See Hayes v. Delbert Services Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) (holding that the arbitration agreement and the delegation provision were non-severable because the "essence" of the contract was intended to ensure that the defendants "could engage in lending and collection practices free from the strictures of any federal law"). This case is factually distinguishable from *Hayes*, as the "brazen nature" of the arbitration agreement in *Hayes* clearly and unequivocally sought to evade federal lending laws by stating, "no United

States state or federal law applies to this Agreement." *Hayes*, 811 F.3d at 670. Subsequent cases from the Fourth Circuit Court of Appeals, though claiming to follow *Hayes*' "essence" approach, instead considered the plaintiffs' delegation provision challenges separately from their challenges to the arbitration agreements as a whole and invalidated those delegation provisions based on a particularized showing that they were invalid. *See, e.g.*, *Hengle*, 19 F.4th at 342 (striking the delegation provision because it "restrains the arbitrator from considering federal law defenses to arbitrability, thereby precluding Plaintiffs from effectively vindicating their federal statutory rights" and separately holding that the dispute was not arbitrable because the choice of law provision in the arbitration agreement would prospectively waive federal causes of action with respect to consumer lending). What's more, the case within the Seventh Circuit upon which Plaintiff leans most heavily also applies a particularized approach that is more consistent with Supreme Court precedent than the "essence" approach applied in *Hayes*. *See Harris*, 686 F. Supp. 3d at 741 (holding that the delegation provision was invalid based on the particularized showing that the choice of law provision "requires an arbitrator to determine whether a valid and enforceable arbitration agreement exists without access to substantive federal law," and separately holding that the arbitration agreement as a whole prospectively waived statutory causes of action).

Given these circumstances, the Undersigned declines Plaintiff's request to apply the "essence" approach set forth in *Hayes* and instead follows well-established Supreme Court precedent holding that a challenge to a delegation provision requires a particularized showing that the delegation provision itself is invalid. Under this approach, Plaintiff's prospective waiver challenge to the delegation provision fails because she has not shown that compelling

15

compliance with the delegation provision would prevent her from vindicating her federal or state rights.

Plaintiff's unconscionability and public policy challenges fail for the same reason. She argues that an arbitration agreement that purportedly waives IUCCC's non-waivable provisions is unconscionable and violates public policy under Indiana law. [Dkt. 73 at 28]. But she has not shown that compelling compliance with the delegation provision and having the issue of arbitrability decided by an arbitrator applying Wisconsin law is itself unconscionable or a violation of public policy. Both defenses—unconscionability and public policy—have been applied successfully to invalidate contracts under Wisconsin law. *See*, *e.g. Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 167-75 (Wis. 2006) (holding that a one-sided arbitration provision was procedurally and substantively unconscionable under Wisconsin law); *Atkins v. Swimwest Family Fitness Center*, 691 N.W.2d 334, 338-39 (Wis. 2005) (holding that an exculpatory contract violated public policy, which the court defined as "that principal of law under which freedom of contract or private dealings is restricted by law for the good of the community"). Plaintiff has not attempted to show a meaningful distinction between the application of these contract defenses under Indiana or Wisconsin law, and she has not shown that an agreement that selects Wisconsin law, rather than Indiana law, is so one-sided as to be unconscionable or a violation of public policy. Accordingly, her unconscionability and public policy challenges to the delegation provision fail.

In sum, Plaintiff's collateral estoppel defense to the delegation provision is perfunctory and undeveloped. The Seventh Circuit Court of Appeals' recent decision in *Harris* is inapplicable because the arbitration agreement provides that issues surrounding contract formation and defenses are controlled by Wisconsin law, which was incorporated into the Tribal

16

Code at the time Plaintiff entered into her loan agreements. The subject matter jurisdiction issues described in *Jackson* are inapplicable. Finally, Plaintiff's prospective waiver, unconscionability, and public policy challenges to the delegation provision fail because those challenges do not present successful challenges to the delegation provision itself. Accordingly, the Undersigned recommends that Defendants' Motion to Compel Arbitration be **GRANTED** on the issue of arbitrability.

### IV. CONCLUSION

For the reasons explained above, the Undersigned **RECOMMENDS** that the Defendants' Motion to Compel be **GRANTED** on the issue of arbitrability.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  9 JUN 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email